STERLING MORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 91705.   Promulgated December 6, 1938.

*Robert V. Jones, Esq.*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

OPINION.

KERN: This proceeding involves that part of a deficiency in the sum of $18,190.45 determined by respondent in petitioner's income tax liability for the year 1933 arising by reason of (1) respondent's. disallowance of a deduction claimed by petitioner in the sum of $796.94 representing interest paid by him on an obligation of the 1260 Astor Street Building Syndicate, (2) respondent's disallowance of a deduction claimed by petitioner on the ground that his investment in the 1242 Lake Shore Drive Syndicate became worthless in the taxable year, and (3) respondent's inclusion in petitioner's gross income of the income of certain trusts.   Thus, there are three issues presented in this proceeding.   The first two, i. e., the issue involving the deductibility of interest payments and the issue involving the loss claimed by petitioner by reason of his investment in the 1242 Lake Shore Drive Syndicate, involve facts practically identical with the facts presented on similar issues in *Sterling Morton*, 38 B. T. A. 1270, covering petitioner's income tax liability for the year 1932.

With regard to the first issue, the facts were stipulated.   With regard to the second issue, most of the facts were stipulated, but there was also introduced at the hearing of this proceeding certain evidence

which, by agreement of the parties, was also to be considered in disposing of the similar issue in *Sterling Morton, supra.* We adopt the facts stipulated by the parties as our findings herein, and with regard to the facts involved in the second issue and not covered by the stipulation, our findings will be the same as made by us in the similar issue involved in *Sterling Morton, supra.* For the reasons set out in that proceeding, we decide on the first issue for the petitioner and on the second issue for the respondent.

Upon the third issue presented by this proceeding, the facts have also been stipulated and we adopt them as our findings. They may be summarized as follows:

Under date of January 3, 1933, the petitioner and the Chicago Title & Trust Co. executed an agreement whereby the petitioner created a trust identified in the records of the Chicago Title & Trust Co. as No. 30121. By this trust agreement petitioner endowed the trust with certain income-bearing securities and provided that the income therefrom should be accumulated during the continuance of the trust. There was reserved to the grantor (petitioner) the right to terminate the trust by giving a memorandum to the trustee of his intention to do so in one year, and another memorandum in the succeeding year, in which latter year the trust would terminate. The trustee was given the right to terminate the trust at any time. The trust, by the terms of its creation, would terminate upon the death of the grantor. Upon termination of the trust the accumulated income and all investments of such income were to be transferred by the trustee to grantor's daughter, Suzette Morton. All the remainder and residue, consisting of the original endowments made by the petitioner, were to be returned to the grantor, or, if he were not then alive, to certain persons named in the trust instrument.

During the year 1933 the Chicago Title & Trust Co., acting under the agreement dated January 3, 1933, identified as No. 30121, received income as follows: Tax-free covenant bond interest, $320; interest, $8,270.93.

On December 31, 1929, petitioner and the Chicago Title & Trust Co. executed an agreement whereby petitioner created a trust identified in the records of the Trust Co. as No. 24299, to which petitioner transferred certain securities. The provisions of the trust instrument, while differing in minor respects from the provisions of the trust instrument in trust No. 30121, which we have just described, were, to a great extent, similar and may be treated for the purposes of our discussion as identical. The income of this trust during 1933 consisted of interest received in the sum of $5,771.15.

On December 31, 1928, Joy Morton, father of the petitioner, created a trust by agreement with the Chicago Title & Trust Co., identified

as trust No. 22146. The original trust agreement provided that the net income of the trust was to be accumulated until the termination date. When the trust was terminated the trustee was to convey the principal and undistributed income of the trust to the administrator or executor of the Joy Morton estate. These provisions of the trust were made subject to sections 2 and 3 of article V of the trust agreement, which provided as follows:

2. The Donor may, at any time, by a memorandum in writing signed by the Donor and delivered to the Trustee during the lifetime of the Donor, modify and amend this Trust Agreement so that; (a) all or any part of the net income of the trust herein created shall be paid to Joan Morton Cudahy, a daughter of the Donor and/or Sterling Morton, son of the Donor, and/or Margaret Morton, wife of the Donor, and/or their heirs and/or testamentary appointees and/or any one or more of the foregoing persons; or (b) all or any part of the net income of the trust herein created shall be accumulated for the benefit of any one or more of the persons above in clause (a) of this paragraph referred to; or (c) all or any part of the principal and undistributed income of the trust herein created shall be distributed by the Trustee on the termination, as herein provided, of the trust herein created, to any one or more of the persons above in clause (a) of this paragraph named or referred to; or (d) the trust herein created and/or as modified and amended in accordance with the terms of this paragraph shall continue for a period of twenty-one (21) years after the death of the Donor or for any period less than twenty-one (21) years.

3. Except as above in this Article V hereof provided, the trust herein created shall be irrevocable.

On January 26, 1931, Joy Morton, under the powers reserved in the agreement of trust No. 22146, modified the same to provide that one-third of the income of the trust should be paid to Sterling Morton, the petitioner, one-third to his daughter, and one-third to his wife. It was further modified and amended to provide that the trust should not terminate until 21 years after the death of the donor.

That part of the income from the Joy Morton trust which was payable to petitioner for the year 1933 was as follows:

| | |
|---|---|
| Tax-free covenant bond interest | $200.00 |
| Dividends | 7,500.00 |
| Interest | 7,945.78 |

Under date of January 3, 1933, the petitioner and the Chicago Title & Trust Co. executed an agreement whereby the petitioner created a trust identified in the records of the Chicago Title & Trust Co. as No. 30122. By this instrument the petitioner sold, conveyed, assigned, transferred, and delivered to the Chicago Title & Trust Co. all the right, title, and interest of the grantor derived from and held under the Joy Morton trust No. 22146. The trustee was given large powers as to the control and management of the income and the manner in which it should be invested. This trust was to terminate upon the

death of the petitioner. There was, however, reserved to the grantor power to terminate the trust in any succeeding year after notice of his intention. Upon the termination of the trust, the trustee was to transfer all right, title, and interest in the Joy Morton trust No. 22146 to the grantor. The trustee could terminate the trust at any time.

All the income of this trust (No. 30122) "shall be accumulated by the trustee during the continuance of the trust herein created, all such accumulations to be part of the trust estate." In this trust, as in the others involved herein, the grantor also reserved the power to direct the trustee to make any investments desirable to the grantor and to make loans with or without securities, which the grantor should direct it to make, to such persons as the grantor should designate, and there was also a provision that the trustee should not be responsible for the validity or value of any such investment or loan so made, or liable for any loss thereon. All the accumulated income of the trust upon termination was to be transferred to the petitioner's wife, Sophia P. Morton.

The respondent contends that the incomes of the trusts created by petitioner and identified as trusts No. 24299, No. 30121, and No. 30122 are taxable to petitioner as the income from revocable trusts, pursuant to the provisions of section 166 of the Revenue Act of 1932, set out in the margin,[1] because the corpus of the trusts would revert to petitioner upon termination of the trusts, and the power of termination was in the trustee who was a "person not having substantial adverse interest in the disposition of * * * the corpus * * *." Respondent further contends that the income of trust No. 30122 is taxable to petitioner because the income of that trust represented income to which petitioner was entitled pursuant to the terms of the Joy Morton trust No. 22146, and was not subject to a valid assignment by him to trust No. 30122.

The contentions of the petitioner are (1) that the trustee, having in each trust the power to terminate and thereby to revest the corpus in the petitioner, is a person having a substantially adverse interest, and therefore, the trusts are not revocable, (2) that the interest of petitioner under the Joy Morton trust No. 22146 was validly assign-

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

    (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

    (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

able by him to trust No. 30122, and (3) the income received by trust No. 30122 from the Joy Morton trust No. 22146 was not taxable to petitioner since it represented a part of the income of the Joy Morton trust No. 22146, all of which was taxable to the grantor thereof, Joy Morton, pursuant to the provisions of section 167 of the Revenue Act of 1932, set out in the margin.[2]

With regard to the question as to whether the trustee is a person not having a substantially adverse interest within the meaning of section 166, we consider the discussion of the Supreme Court in *Reinecke* v. *Smith*, 289 U. S. 172, to indicate clearly the view of that tribunal to the effect that the trustee is a person who does not have a substantially adverse interest. The Court in that case points out that the trustee "owes no duty  *  *  *  to resist alteration or revocation of the trust", but merely owes a duty "to protect the trust *res*, faithfully to administer it, and to distribute the income", and therefore, so far as revocation is concerned, the trustee may be considered as "a stranger to the trust." In the instant case, the trustee owes no duty to refrain from terminating the trust, but has the express right so to do.

Petitioner insists that, since the trustee is a corporate trustee which is paid for its services, it has, as a practical matter, an interest in the continuation of the trust which would make it a person having an interest substantially adverse to that of the petitioner with regard to any termination of the trust and consequent revesting of the corpus in petitioner. We are not impressed by this argument since, in *Reinecke* v. *Smith*, *supra*, one of the trustees was a corporation and that fact in no way affected the decision of the Court. Whatever might be the "practical" aspects of the matter, it is our conclusion that there is no duty, legal or equitable, on the part of the trustee to refrain from terminating the trusts, and thereby revesting the corpus

---

[2] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor ; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor ; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

in the petitioner, and, therefore, that the trustee is a person not having a substantially adverse interest within the meaning of section 166.

A large part of the arguments of both petitioner and respondent are addressed to the problems incident to the income of the trust identified as trust No. 30122. That trust was created by petitioner, who granted to the Chicago Title & Trust Co., as trustee, all of his right, title, and interest as beneficiary under the Joy Morton trust No. 22146, the income in trust No. 30122 to be accumulated by the trustee during petitioner's life, or until the termination of the trust, and then paid to petitioner's wife. As we have pointed out before, the trustee had the right to terminate the trust at any time, and upon its termination during petitioner's life he became entitled to the corpus of the trust. The interest which petitioner had in and to the net income and the property of the Joy Morton trust No. 22146 might be defeated upon certain contingencies, but at the time petitioner created trust No. 30122, and during the taxable year these contingencies had not occurred.

Respondent contends that petitioner could not "make a valid assignment of income-producing property prior to the time his right to receive it became a reality." In our opinion, however, petitioner was entitled, during his life, subject to certain contingencies, to a certain part of the net income of the property held in the Joy Morton trust No. 20146, and thus became the owner subject to a condition subsequent of an equitable interest in the corpus of the property. Such an interest is subject to a valid assignment. *Blair* v. *Commissioner*, 300 U. S. 5. It should be noted that that case involved the law of Illinois, and that the settlor, trustee, and beneficiaries of the two trusts subject to our consideration are citizens of Illinois, and that these trusts were created pursuant to its laws.

However, in view of our opinion that trust No. 30122 is a revocable trust within the meaning of section 166, the income therefrom must be held taxable to petitioner even though we conclude, as we have done, that the assignment of petitioner's interest under the Joy Morton trust No. 22146 to the trustee in trust No. 30122 was valid, unless the other circumstances of the case require a different result.

Petitioner contends that the income received by trust No. 30122 from the Joy Morton trust No. 22146 is not taxable to petitioner, since it represented a part of the income of trust No. 22146, all of which was taxable to the grantor of that trust, Joy Morton, pursuant to the provisions of section 167 (a) (1) of the Revenue Act of 1932 set out in the margin (footnote No. 2, *supra*). This contention is predicated on the argument that either the income of that trust was to be accu-

mulated for future distribution to the grantor, or the grantor had the power to so modify the trust instrument as to provide for the accumulation of the income of the trust for such future distribution. The original trust instrument executed by Joy Morton on December 31, 1928, did provide that the trustee was to accumulate the trust income and upon the termination of the trust was to pay over the accumulated income to the executor or administrator of the grantor. However, the trust instrument reserved the power to the grantor of modifying the trust in four possible respects. That section of the trust instrument has already been quoted.

Pursuant to this power of modification reserved to the grantor, he did modify the terms of the trust pursuant to the clauses of that section of the trust instrument quoted above which are designated as (a) and (b) therein. This modification was made under date of January 26, 1931, and thereafter, and during the taxable year, all of the net income of trust No. 22146 was payable and was paid by the trustee in equal parts to the son, daughter, and wife of the grantor, Joy Morton. No part of the net income of this trust was accumulated or could be accumulated for future distribution to the grantor pursuant to the trust instrument as modified. Therefore, if one looks at the trust instrument as modified, which sets out the rights of the grantor as they existed during the taxable year, it is apparent that section 167 would not be applicable and that the income of the trust would not be taxable to Joy Morton unless he had a right to modify the terms of the trust instrument in such a way that it again would provide for the accumulation of income for future distribution to him. We are of the opinion that he had no such right during the taxable year. The sole right of modification reserved to the grantor is set out in the section of the trust instrument which we have quoted, and is limited to the four possible modifications which it describes. Beyond these modes of modification the trust is expressly made irrevocable. Once having modified the trust instrument as the grantor did, there is no right given or reserved to the grantor by the trust instrument again to modify it in such a way as again to provide for accumulations of the net income of the trust for future distribution to him. Cf. *Day* v. *Commissioner*, 92 Fed. (2d) 179.

The fact that he could modify the trust instrument to provide for a different proportion in the distribution of the net income of the trust as between his daughter, son, and wife, even to the exclusion of any of them from its distribution, or to provide for an accumulation of the income for their benefit rather than a distribution, might well call for the inclusion of the corpus of the trust in computing the value of grantor's estate for estate tax purposes, pursuant to section

302 (d) of the Revenue Act of 1926, set out in the margin,[3] despite the fact that he could not revest the corpus or income in himself, cf. *Porter* v. *Commissioner*, 288 U. S. 436, but no such power of modification would be relevant to the question of whether the income of the trust was taxable to the grantor pursuant to section 167 of the Revenue Act of 1932.

Since there is no claim that the grantor had any right during the taxable year to revest in himself any part of the corpus of the trust, the case of *Corliss* v. *Bowers*, 281 U. S. 376, is not pertinent.

Petitioner, in his brief, states that respondent has asserted an income tax liability against Joy Morton for the year 1934 by reason of including in his gross income for that year the income of trust No. 22146. There is nothing in the record, however, concerning this claim on the part of respondent or its basis. Obviously, we can not consider this fact in this proceeding.

Upon this issue we find for the respondent.

*Decision will be entered under Rule 50.*

---

[3] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. The relinquishment of any such power not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death but after the enactment of this Act without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall be deemed and held to have been made in contemplation of death within the meaning of this title.