William A. Frease v. Commissioner.
Frease v. Commissioner
Docket Nos. 1936, 2573.
United States Tax Court
1944 Tax Ct. Memo LEXIS 177; 3 T.C.M. (CCH) 708; T.C.M. (RIA) 44235; July 19, 1944
*177 Albert B. Arbaugh, Esq., 1200 Harter Bank Bldg., Canton, O., for the petitioner. Cecil A. Haas, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax of $1,100.32, $920.21 and $778.87 for the calendar years 1937, 1938 and 1939, respectively, and penalties for 1937 and 1938 of $275.08 and $230.05, respectively. The deficiencies result from respondent's action in including in petitioner's income for those years all of the income realized in such years by a trust created by petitioner, of which he and the members of his family were beneficiaries. The penalties were imposed for failure of petitioner to file returns for 1937 and 1938. Certain of the facts were stipulated and we so find them. Additional facts hereinafter set out and not appearing in the stipulation are found upon evidence presented at the hearing. Findings of Fact During the years here involved petitioner was, and is now, a resident of Canton, Ohio, in the eighteenth collection district of Ohio. At the time of the hearing petitioner was temporarily located at Skyland, North Carolina. By the will of his father, George B. Frease, who died *178 March 5, 1928, petitioner became entitled to a substantial portion of the latter's estate. On March 14, 1928 he transferred by trust indenture to the George D. Harter Bank of Canton, now the Harter Bank and Trust Company, as trustee, all of the personal property distributable to him in the administration of that estate. The value of the property so transferred in trust was in excess of $400,000. The indenture of trust executed by petitioner provided for the appointment of two co-trustees and designated Harry R. Jones and R. Verne Mitchell to perform these duties. In the case of the death or resignation of a co-trustee, provision was made for the appointment of a successor by the trustee and the remaining co-trustee, such appointment to be subject to approval by petitioner. The two co-trustees designated by the indenture of trust were acquaintances of petitioner and officers of an investment business with which petitioner had at one time been connected. The George D. Harter Bank, as trustee, was given broad powers to manage and conserve the trust estate, sales and reinvestments of trust assets to be made only upon approval by the co-trustees. Petitioner reserved the right to vote, *179 if he so desired, any stocks held as part of the trust corpus and the trustee was authorized not to file a personal property return or pay personal property taxes on the assets comprising the trust corpus, petitioner assuming such liability and responsibility himself. By the trust instrument the trustee was directed to first realize upon the transferred assets sufficient funds and pay certain specified existing debts owed by petitioner and make a cash payment of $5,000 to petitioner and, in addition, certain cash payments to designated relatives. After making the specified cash payments from the corpus of the trust estate the net yearly income from the balance of such corpus was to be distributed by the trustee to named beneficiaries. Two aunts of petitioner were to receive $500 per year each for life, together with the payment each year of one-third of the taxes on their home. Petitioner's wife was to receive $1,000 per month and each of petitioner's three children $200 per month, the balance of the yearly income to be paid to petitioner. Provision was made for the setting aside, upon the death of petitioner, of so much of the trust corpus as was necessary to produce $1,000 per *180 month income payable to petitioner's wife and the balance of the trust corpus was provided to be held in equal shares in trust for petitioner's three children, they to receive the income therefrom and the principal to be distributable to them by payments made when they arrived at the ages of 25, 30 and 35 years, the amounts so held in trust for them to be increased upon the death of their mother by that portion of the corpus set aside for her benefit. Petitioner's children were further given the right to dispose by will of their interests in the trust estate. The indenture of trust further provided, inter alia: "During the period that said Trustee is paying the net income derived from the Trust estate as above provided to my wife and to my children and to myself, the Trustee shall have power and authority, with the approval in writing of the Co-Trustees to alter and change the apportionment and division of the net income to be paid hereunder to my wife, my children and myself according to the several needs, requirements and habits of life of such beneficiaries, and said Trustee with the approval in writing of said Co-Trustees shall have authority to use from time to time portions *181 of the principal of said Trust estate for the maintenance of myself and my wife, Pauline Rider Frease, and of our children and for their education should our condition and income from this Trust estate and other sources reasonably require such use of portions of the principal of the Trust estate. "The above provision shall, however, not be construed to authorize the Trustee to withhold the distribution monthly of the entire net income of the Trust estate. "The Trustee shall have power and authority subject to the approval in writing of the Co-Trustees to pay over to me from time to time portions of the principal in order to enable me to engage in business, provided that the proposed business shall seem to the Trustee and to the Co-Trustees a reasonably prudent enterprise and myself competent and fit to engage therein. * * * * *
"This agreement and settlement is made without any right of revocation or recall unto myself, but I do reserve the right, during my life, or so long as I am competent to act, in case it should be found that this instrument is uncertain or incomplete in any respect, from time to time, to modify the terms of this settlement, but only for the purpose of defining *182 or enlarging the powers of the Trustee and of the Co-Trustees for the purpose of facilitating the proper administration of the Trust estate. "Any such modification shall be by written instrument signed by me, approved in writing by the Co-Trustees and delivered to the Trustee." Coincident with the delivery of the indenture of trust by petitioner there was executed and delivered by him a modification of that indenture directing that the payments provided of $200 per month to his three children would be made by the trustee to their mother until they arrived at the age of 25 years, these funds to be used by her, in her discretion, for their support, maintenance and education, any balance not so used to be invested by her for the benefit of the respective child and paid over to it upon reaching the age of 25. At the time of the creation of the aforementioned trust, petitioner was living with his wife, Pauline Rider Frease. Of their marriage three children had been born: George B. Frease, III. April 27, 1915; Jessie R. Frease, September 11, 1917; and William A. Frease, Jr., November 8, 1921. At the time of the creation of the trust there was no marital discord in petitioner's family *183 and no contemplation of divorce in connection with its creation. On October 25, 1933, differences having arisen between petitioner and his wife, Pauline Rider Frease, the latter filed suit for absolute divorce in the Court of Common Pleas of Stark County, Ohio, and on the 14th day of December 1933, was given a decree of absolute divorce by that court. In this decree, in determining the rights of plaintiff to alimony from the defendant, the court recited the provisions of the trust agreement for payment of $1,000 per month to Pauline Rider Frease and $200 per month to each of petitioner's children. It then continued with the following: "It appearing to the court that said Trust Agreement and the provisions thereof for plaintiff and said children are fair and proper, the court hereby adopts said provisions as a part of this decree and approves the same in lieu of any other finding or order of alimony payments for plaintiff or support payments for said children and orders and adjudges that plaintiff shall have said provisions so made in said Trust Agreement as and for alimony for herself and support for said children." Subsequent to the divorce of petitioner by his wife, Pauline Rider *184 Frease, he remarried and during the calendar years 1937, 1938 and 1939 was living with such second wife, Dorothy Driver Frease. Of this marriage one son, Belden A. Frease, was born on October 24, 1938. In December 1936, Harry R. Jones, who was named in the trust agreement as one of the co-trustees, died and Paul B. Belden was appointed as successor co-trustee with the written approval of petitioner. On October 7, 1938, the two co-trustees, R. Verne Mitchell and Paul B. Belden, with the approval of the trustee, exercised formally in writing their power and authority under the trust agreement to change the apportionment of income among the beneficiaries and to invade the corpus for the purpose of making the payments the new apportionment provided. By the action so taken the monthly payment to petitioner's former wife, Pauline Rider Frease, was decreased from $1,000 to $500 per month and the payments of $200 per month to each of petitioner's three children were reduced to $100 per month, and the payment of $600 per month was provided to be made to petitioner. Following this, payments were made by the trustee of the monthly amounts thus provided up until July 31, 1942, the co-trustees, *185 with the approval of the trustee, having on July 28, 1942 taken action formally in writing to change the allocation of income from the trust payable to George B. Frease, III, and to Jessie Frease Benare, two of the children of petitioner and his former wife, to increase these payments to each from $100 per month, then being received, to $200 per month. This change and reallocation of income was made by the trustee and co-trustees upon the suggestion of petitioner, these two children being then married and in need of additional income due to the fact that the husband in each of the two families entered the military wervece. In the case of both of thes reallocations of income by the trustee and the co-trustees it was provided that payments specified should be made out of corpus if the yearly income was insufficient to meet them. Following the action of the trustee and co-trustees in reallocating income payable out of the trust by reducing that paid to petitioner's former wife and his three children to one-half of the amount originally specified, the income from the trust estate was insufficient for some years to meet the full payment of $600 per month to petitioner provided for and *186 the corpus of the trust was invaded by the trustee to make up the insufficiency. The return by the George D. Harter Bank, as trustee, for the year 1937 discloses no payment of income from the trust to the petitioner, the return for 1938, a payment of $1,483.69 of trust income to him, and the return for 1939, payment of trust income to him of $6,049.91. For the years 1937 and 1938 the petitioner filed no returns. In each of those years his income received from all sources, including income of the trust distributed to him, amounted to less than his exemptions of $2,500. In each of the years here involved the income of the trust distributed by the trustee to petitioner's wife and three children was returned by them for taxation. At several times since petitioner's divorce from his former wife, Pauline Rider Frease, the trustee and co-trustees have made distributions of principal of the trust to petitioner or for his support. On one occasion in 1937 $1,000 was paid from corpus to the guardian of petitioner who was for a period under guardianship. On May 31, 1940, there was a payment of $1,100 by the trustee from corpus to petitioner and on July 11 of that year $12,000 of corpus was *187 used to purchase a home for petitioner at SkylandNorth Carolina, and $2,100 expended from corpus in the reconditioning of this property, At the time of the hearing the value of the trust corpus in the hands of the trustee was between $400,000 and $500,000. Petitioner executed and filed with respondent a consent extending the time for the collection of the taxes due for 1939 to a date subsequent to that upon which the deficiency was determined by respondent and petitioner duly notified. Petitioner concedes the issue raised of the statute of limitations as to the year 1939. Opinion In determining the disputed deficiencies respondent treated the trust income as taxable to petitioner under sections 22 (a) and 166 of the Revenue Acts of 1936 and 1938. Upon the hearing and on brief he advances the further contention that such income is also taxable to petitioner under section 167 of those Acts. Petitioner argues that regardless of the effect of the trust as originally created, the decree of the court in the divorce proceeding vested then in petitioner's children and divorced wife the right to $1,000 per month to the wife and $200 per month for each of the children from the income of *188 the trust in full settlement for their maintenance and support. We disagree. In that decree the court either adopted all the provisions of the trust as a part of its decree or it adopted none of them and merely awarded as charges against the petitioner and payable to the divorced wife, and children, those amounts named therein "* * * in lieu of alimony". In neither event did the court by that decree attempt or intend to change any of the provisions of the trust. In fact the parties have never so construed the decree. Certainly, at least in the present situation, that is important. Estate of John Howard Helfrich et al. v. Commissioner, 143 Fed. (2d) 43, (C.C.A., 7th Cir., June 2, 1944). Subsequent to the date of the divorce decree, the trustees have not only at times distributed portions of the corpus of the trust estate to the petitioner but they have reduced by one-half the allocation to petitioner's former wife and children as contained in the original trust, and the record does not reveal any effort by the beneficiaries to oppose or prevent these actions. Passing the question of the applicability of section 22 (a), was the contested income *189 of the trust taxable to petitioner under sections 166 and 167? Neither the trustee nor either the co-trustees were holders of an adverse interest in the trust. Reinecke v. Smith, 289 U.S. 172; Sterling Morton, 38 B.T.A. 1283; affd., 109 Fed. (2d) 47. Under the trust indenture they were given the power, within their discretion, to reallocate the amounts of income to be paid to the several beneficiaries, even, as we understand it, to the extent of paying all of the income to petitioner if requested as necessary in their judgment for his support and maintenance. They have a similar power to return corpus to him in any amount "reasonably" necessary for his maintenance and support when the income is insufficient. As to the corpus, their power goes even further. They are authorized to pay over to him an unlimited amount of the corpus to enable him "to engage in business" provided only "that the proposed business shall seem to the Trustee and to the Co-Trustees a reasonably prudent enterprise and * * * [petitioner] competent and fit to engage therein". Moreover, there is no provision that the proceeds *190 of such business operated by the petitioner with the funds thus returned to him by the trustee shall be for the benefit of the trust. It is significant further that the trustees as mentioned before have reallocated the income of the trust by greatly increasing the amount payable to petitioner and similarly reducing that to other beneficiaries. They have distributed portions of the corpus to the petitioner. In addition to payments from corpus for his support, the trustee distributed $1,100 of corpus to petitioner in May 1940. In July of that year, he bought and reconditioned a home for himself with $14,100 of such corpus thus obtained. The trustee recites that its purpose is "to make provision for my [petitioner's] wife, my children and myself". But petitioner, in explaining on the witness stand his purpose in creating it, made clear what we think its purpose was. He testified that "I simply wanted to safeguard my estate; protect it and have it properly managed", and there are provisions in the trust which support this testimony. Thus, one clause provides: This agreement and settlement is made without any right of revocation or recall unto myself, but I do reserve the right, during *191 my life, or so long as I am competent to act, in case it should be found that this instrument is uncertain or incomplete in any respect, from time to time, to modify the terms of this settlement, but only for the purpose of defining or enlarging the powers of the Trustee and of the Co-Trustees for the purpose of facilitating the proper administration of the Trust estate. By another clause the trust expressly relieved the trustee from filing a personal property tax return or paying personal property taxes on the trust property. Petitioner assumed both these responsibilities himself. There are provisions in the trust indenture which, as is true of its purpose as stated therein, tend to support another view. But a consideration of the entire instrument, including the provisions specifically mentioned hereinabove, as well as what was actually done under the trust, leads us inevitably to the conclusion that there was no substantial limitation upon the exercise of the discretion of the trustees in paying any part or all of the income or corpus of this trust to the petitioner. It follows that such income, for the taxable years, was properly taxed to petitioner under sections 166 and 167. *192 Oleta E. Ewald, 2 T.C. 384; Lewis Hunt Mills, 39 B.T.A. 798; Commissioner v. Mary Boyd Evans, 126 Fed. (2d) 270; cert. den., 317 U.S. 638; Sterling Morton v. Commissioner, supra; Commissioner v. Frances S. Willson, 132 Fed. (2d) 255. This holding renders moot the question of the applicability of section 22 (a). Petitioner raises as an alternative issue his right to a deduction for 1937, 1938 and 1939 of an allowance for dependency with respect to his son, William A. Frease, Jr., who became 18 years of age on November 8, 1939. He further seeks similar dependency allowances in respect to his son by his second marriage, Belden A. Frease, who was born October 24, 1938. [1]
With respect to the request for allowance on account of this younger son, respondent concedes that the allowance is proper for the proportionate part of 1938 and the year 1939. With respect to the allowance asked on account of his son, William A. Frease, Jr., a different condition exists. This son is not a member of petitioner's *193 household. Since the divorce of petitioner from his first wife this son has been a member of her family. It is assumed that petitioner is requesting the allowance upon the theory that if the income of $100 per month, received by his former wife to be held in trust for his son, is to be treated as income of petitioner, then it must be conceded that this income is furnished by petitioner and constituted as much as 50 per cent of the cost of this son's support and maintenance. No proof, however, has been introduced as to the cost of support and maintenance of this son nor does it appear from whom he drew the major part of this cost in the taxable years. For all we are advised the greater part of the cost of his support may have been furnished by his mother who may have claimed a deduction upon that basis, to which she would have a right. We accordingly hold that the proof is insufficient to determine that the petitioner is entitled to that deduction. The only remaining question is that of the penalties proposed by respondent in 1937 and 1938, for which years petitioner filed no returns. [2] Unless the income of the trust here involved was taxable to petitioner in those years his taxable *194 income was less than the amount upon which he would have been required to file returns. The trust in question had been in existence for a number of years. The income which we now hold was taxable to him for 1937 and 1938 had been actually received and returned for tax by his wife and children. This condition had existed since the creation of the trust and such returns apparently had been accepted. We hold under these conditions that there was reasonable cause for petitioner's failure to file returns for those years. The imposition of the penalties is accordingly disapproved. Decision will be entered under Rule 50. Footnotes
1. Rev. Act of 1938, sec. 25.↩
2. Rev. Acts of 1936 and 1938, sec. 291.↩